IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LISA AND JASON WEBB**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16 C 11125 |
| | ) |
| **MEDICREDIT, INC.**, et al., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM ORDER

Something more than a decade and a half has elapsed since this Court, in large part to spare its then secretary the chore of repeatedly transcribing of this Court's efforts to address a number of venial (not mortal) sins committed by all too many defense lawyers who view pleading as a sort of shell game, rather than as a means for identifying what is or is not at issue between the litigants, published a multipart Appendix to its opinion in State Farm Mut. Auto. Ins. Co. v. Riley, 199 F.R.D. 276, 278 (N.D. Ill. 2001). Regrettably the filing of such defensive pleadings still continues apace, and this Court has concluded that egregious examples of such questionable practices ought to be considered for possible sanctions under Fed. R. Civ. P. ("Rule") 11(c)(3).

To that end, this memorandum order has been prompted by last week's delivery to this Court's chambers of an Answer by Medicredit, Inc. ("Medicredit") to the Complaint brought against it by Lisa and Jason Webb (collectively "Webbs"), coupled with a grab bag of nine purported affirmative defenses ("ADs") that follow the Answer itself. This memorandum order will first refer to some problematic aspects of the Answer and then turn to the claimed ADs.

To begin with, Medicredit's counsel has included a host of disclaimers pursuant to Rule 8(b)(5), prescribed by the drafters of the Rules as available to a defendant that can neither admit or deny allegations in a Complaint as called for by Rule 8(b)(1)(B) (see Answer ¶¶ 2, 3, 4, 6, 10, 11, 13, 14 and 15). For the most part this Court will itself echo Rule 8(b)(5), for it lacks enough information to form a belief that questions the bona fides of such disclaimers -- but a universal problem is created by defense counsel's constant and impermissible addition of the phrase "and, therefore, denies the same." That is of course oxymoronic -- how can a party disclaim knowledge or information sufficient even to form a <u>belief</u> as to the truth of an allegation and then go on to <u>deny</u> it?

Accordingly the offending addition is stricken from all paragraphs of the Answer where it appears. Next, although as stated in the last paragraph this Court will credit most of Medicredit's disclaimers as apparently advanced in the objective and subjective good faith called for by Rule 11(b), that would seem questionable as to at least a couple of them. For example:[1]

1. With the Webbs' Complaint ¶ 13 having alleged that Medicredit was expressly listed in the schedule to the Webbs' voluntary bankruptcy petition filed in late September 2016 (Complaint ¶ 11), and with Complaint ¶ 14 having alleged that the Clerk of the Bankruptcy Court mailed a notice of the bankruptcy petition to Medicredit, how can lawyers acting as Medicredit's counsel assert their client's lack of knowledge (or

---

[1] No effort has been made here to be exhaustive -- it is of course Medicredit's duty to proffer such disclaimers responsibly and not as a form of cop out. Medicredit's counsel are expected to question their client on that score in preparing the amended responsive pleading ordered hereafter.

> even more, its lack of information sufficient to form a belief) of those facts?
>
> 2. Although this instance is less troubling, a comparable disclaimer is advanced as to the Complaint ¶ 15 allegation that someone at Medicredit telephoned the Webbs in early October 2016 to collect the indebtedness referred to in the Complaint. In that respect it may well be that Medicredit's business practice does not maintain detailed records as to such debt collection efforts, so that this memorandum order simply raises a query in that respect.

Next Medicredit's counsel has decided that "no response is required" to what they regard as a "legal conclusion" (see Answer ¶¶ 7, 12, 16 and 17). That is of course dead wrong -- see App'x ¶ 2 to State Farm. Indeed, defense counsel themselves found no difficulty in responding with an admission to the ultimate legal conclusion -- one that alleges subject matter jurisdiction (see Complaint and Answer ¶ 1). Moreover, Answer ¶¶ 12 and 16 compound the felony by nevertheless denying the corresponding Complaint allegations, which appear accurate on their face.

Finally, this memorandum order turns to the purported ADs advanced by Medicredit's counsel. Although what follows also may not be exhaustive, at least the following assertions are plainly problematic:

> 1. AD A is not only unnecessary but does not qualify as an AD within the purview of Rule 8(c) and the case law applying and construing that Rule -- in that regard also see App'x ¶ 5 to State Farm.

2. AD B is not only frivolous in its approach to the "notice pleading" concept that underpins federal pleading but is also flawed as a conceptual matter. If defense counsel really believes that the Webbs' Complaint is vulnerable in Rule 12(b)(6) terms, that should have been advanced up front in a properly supported motion, rather than simply being planted as a prospective bomb available to explode the Complaint at some future date.

3. AD C's partial laundry list selected from the grab bag of defenses listed in Rule 8(c) is subject to the same criticism and, more importantly, is totally uninformative as to the predicate for each of the listed grounds.

4. Although AD D is at odds with the principle that an AD must accept the allegations of a complaint while then asserting some basis for denying liability anyway (in this instance, for example, AD D is at odds with Complaint ¶ 17), that AD will not be stricken because it -- unlike the other matters dealt with here -- serves the purpose of notice pleading.

5. AD E asserts in part that the Webbs have failed to mitigate damages, if any, an assertion that by definition is totally speculative and must be stricken.

6. AD F and AD H provide living evidence of the carelessness with which defense counsel have approached the task of pleading -- they are identical to the letter. Moreover, their blunderbuss approach is really unacceptable.

7. Finally, AD I is yet another example of poor practice. There is of course no reason to reserve the possibility of future ADs that may emerge during

the course of litigation, so this too is another illustration of sheer boilerplate rather than thoughtful lawyering.

This Court regrets having to waste so much time on a patently thoughtless pleading, which regrettably is the work product of a large national law firm with a number of branches in other countries as well. In any event, because of the multiple flaws recounted here the entire responsive pleading is stricken, so that counsel can return to the drawing board and produce an acceptable self-contained replacement pleading on or before January 23, 2017.

Lastly, because the matters dealt with here presumably reflect counsel's errors rather than their being placed at the client's doorstep, no charge is to be made for the time and expense involved in generating the repleading. Counsel are ordered to advise the client that no charge will be made, with a copy of counsel's letter of transmittal to be sent to this Court's chambers (purely for informational purposes, not for filing).

_____
Milton I. Shadur
Senior United States District Judge

Date: January 9, 2017